BREAUX, J.
The plaintiff firm, owner of two tracts of land in the parish of Terrebonne, under cultivation, one known as Wood-lawn, and the other as Ashland, brought suit against defendants to enjoin and prohibit them from placing further obstructions in a drain through which the waters from these places flow. Plaintiffs also sue for damages, and ask that the logs and obstructions placed in the drain be removed. These two plantations front on Bayou Grand Caillou. and Woodlawn is adjacent to Honduras Plantation.
These lands may be identified as to their locality by the following sketch, which also roughly sets forth the drainage in question.

There is a vast triangular area which drains through the Bayou Sale and Chauvin into Quitman Lake. At the head of this triangle plaintiffs’ plantations are situated. The outlet from these plantations is through Bayou Sale, running through a cypress swamp to a floating prairie, thence through the “canal” shown in the sketch, and on down into Lake Quitman, which debouches into Bayou Dulac, and from Dulac into Bayou Grand Caillou, which flows into the Gulf.
The record informs us that, in order to obtain a good system of drainage, the drainage commission of District No. 1 of the parish of Terrebonne opened and dredged Bayou Chauvin, cut a canal through the prairie connecting Bayou Chauvin with Bayou Sale, and dredged Bayou Sale up as far as the upper line of plaintiffs’ Woodlawn plantation. Authorized by Act No. 37, p. 40, of 1894.
A good drainage was the result, and a reasonable flow of the rainfall from the land within the district to the Gulf.
Defendants were engaged in cutting and pulling logs. Their pullboat was fastened to the bank at or near the place the Bayou Sale waters fall into the canal which connects it with Bayou Chauvin. They pulled the logs from the adjacent swamps into the bayou near their 'pullboat. After they had been pulled into the bayou, they were rafted to be towed away. These logs were pulled by a pullboat, that is, by a species of boat with a windlass. The chain of this boat is fastened to the logs, and by a steam appliance the logs are pulled from a distance. The logs are pulled at an angle of about 45 degrees, and are made to fall lengthwise into the stream. It happened that there were sinkers among these logs, and others that were loose logs. They were pellmell in the bayou. In one place there was a log placed across the bayou, all of which, plaintiffs’ contention is, held hack the water and thereby interfered with the drainage of the plantation.
Defendants proceeded by rules to have the injunction dissolved, on the ground that the plaintiff had no cause of action; that they had the right to pull timber into the bayou and canal for sale or for use; that one of the defendants, Daspit, is the owner of the land upon which the timber was situated, as well as of the land through which the canal and bayou passes,. where the pullboat was sit *63 uated, and where the timber was pulled into the canal; that the canal is public.
Defendants aver that the timber pulled into the canal by them did not obstruct the drainage; that the timber was about seven miles below plaintiffs’ plantations; that the level of the plantations is about eight feet higher than the place where the timber was situated; that there were other obstructions in the bayou not placed therein by them; that theirs was floating timber. The severe rain and wind storm which, defendants say, fell and blew for several days from the Gulf, forced the water back, and caused a rise of waters in the bayou, canal, and swamps; that there was a sheet of water on each side extending out some distance, which prevented the waters from running into the Gulf; that the tide ebbs and flows where the logs complained of were pulled.
This rule was referred to the merits to stand as an answer.
Two of the defendants, Charles and Alfred Daspit, severed in their defense, and averred, in substance, that they did not float any timber, and committed no act of which plaintiff can have the least cause to complain. They aver that as to them the injunction was issued without cause, and that they are entitled to its dissolution and to attorney’s fees.
The evidence shows that there was a very heavy rain on the 23d of April, 1900; that the water remained on plaintiffs’ plantation at different places nine or ten days. A number of witnesses affirmatively testify that there was a strong wind from the south at the time, and that the south wind will force up the water in the opposite direction.
The drain in question passes through a floating or trembling prairie, which is about four miles wide, and measures about six miles in the direction of the Gulf along the drain. The “tremblans,” to use a native application of the word, are an unusual formation. It consists of vegetation, part of it decayed, interwoven, and in some places quite consistent. Cattle will browse on its surface in places, and feed on its feuille succulente, or green nutritious leaver and twigs which the water keeps fresh. In appearance the prairie tremblante is a verdant meadow, consisting of a large body of water covered with vegetation. It is shaky in many places, yet it does not as a body float around over the waters, as has sometimes been said. It is stationary, but not always a safe surface. A heavy step will cause a vibrating motion of the surface, extending a number of feet around.
Plaintiffs’ learned counsel refer us to the following on the subject from the Century Dictionary, verbo “trembling prairie”: “Also in the vicinity of the numerous lakes in the parish (Lafourche, La.), exists immense tracts called the trembling prairies. These seem to be a surface composed of matted roots and decayed stalks of the marsh vegetation, floating upon the water in some instances and upon very soft mud in other. Over' these prairies it is practicable to walk, and cattle graze upon them, although they vibrate at every tread, and a cut of a few feet in depth will always discover a substratum of water.”
This volume of water stops the current from above. It is an opposing body of water. It receives comparatively little water in addition to that it has; mysteriously enough, to some extent, it resists the ordinary law of gravitation, and in its course water from above is driven to channels along its sides. This would be the effect of a full grown vigorous floatant, but even then it would not prevent the action of the storm and strong winds on the waters covering other areas adjacent. The draining channel in question may have been- checked and the water held back by the wind none the less. The onus of the wrong may not have been on the floatants, and it may not have been on defendants’ logs. The theory of plaintiffs is that, in view of the fact that the trembling prairie held its waters and admitted very little foreign water, necessarily all the water must flow through the drain in question. Taking that view as correct, it does not necessarily follow that defendants’ logs are the opposing agents, and as such they caused the damages claimed.
If the waters had been stopped in their flow or checked by the logs, their force above the logs would have caused them to spread from the canal in question to and over the prairie tremblante, which prairie, after all, is not so inqpervious as plaintiffs assert.
The theory that the pressure was only felt in the canal above the asserted obstructing *65 logs, and that, through the canal, forced the waters back to plaintiffs’ plantation, is not sustained by the evidence; for if the waters had swollen (as contended) in the canal, they would have spread over the prairie tremblante long before reaching plaintiffs’ plantation. It was shown that part of the prairie (along the canal) had ceased to be tremblante, having become dry. This part, at least, would readily have received the waters. It was not shown that the waters to any great extent spread over the banks of the canal.
The weight of the testimony shows that there was heavy wind from the southeast, and that south winds have the effect of holding up the waters; that it was a stiff wind; and that it blew for a number of days from that direction. This testimony sustains the statement that the strong wind was the cause that prevented the water which fell on the 22d of April, 1900, from running to the Gulf.
An inspection of the sketch annexed shows the purchase, or force of the wind, on the lake and surrounding country. It was strong enough to hold its own against the waters in the floating prairies, and of the cypress swamps against the drain and against the tide. A number of witnesses agreed regarding the effect of the high wind. A witness for plaintiff, who is chairman of the drainage commission—Mr. Barrow—testified: “I cannot say that there is a current up the bayou each day, or down the bayou each day. There is a certain amount of water that feeds that bayou. It is only while there is water above that the flow is out. If it continued to flow, and there was no water above to feed it, it would go dry, which it does not do. The north wind will make it run out until there is little water in it, and the south wind will force the water up the other way. * * * These south winds do swell the tides. We have seen the tides in our bayous rise by heavy winds, and the tides in the lower portion of the parish two feet with heavy wind from the southeast.”
The rainfall of 1898, invoked by plaintiffs by way of comparison with that of 1900, can furnish plaintiffs but little comfort. True, there was that year (1898) a precipitation of 13 inches; the fields were submerged; the water ran off, and destroyed no crop and committed no damage. There were no logs in the drainage canal and bayous, and the water went off without delay. The test or comparison between the storm of 1898 and that of 1900, however, ceases to have any weight in view of the fact that it was not shown from which direction the wind in 1898 was blowing in the fall of the year, when usually the wind blows from another direction than it does in the early part of the year—April, for instance, in this case, in 1900. There is no proof before the court that there was a southern wind at the time of the precipitation in 1898. The evidence shows that in 1898 the water stayed several days on plaintiffs’ plantations.
An overflow of the crops in the fall, when the crop is ripe, we are informed by the evidence, is much less destructive than an overflow in the spring, when the erop is young. On the 22d of April, 1900, when plaintiffs’ place was submerged and his drain obstructed, he alleges there was unquestionably storm. We copy from the report of the Weather Bureau admitted in evidence:
“Wind—The prevailing direction was southeast. The total movement at New Orleans,” etc. Again: “Lighter but copious showers continued during the 18th to 21st, and on the 22d and 23d torrential rains were again recorded at many, and amounts in excess of one inch at nearly every Tegular and special station in the State.’ ”
The flow of water to Bayou Olivier is not as conducive in fact in favor of plaintiffs as they contend. Here, with reference to this Bayou Olivier, plaintiffs urge that if the wind was not strong enough to stop the flow of water through it (Olivier), for the same reason it was not strong enough to prevent the water from running through the regular drain in question. The wind may not have operated as strongly at the place it (the water) found its way to this bayou—Dulac. There may have been more of an incline at this point. Comparatively insignificant the ’quantity of water which flowed through Olivier Bayou, we judge from the testimony; not enough to refute the contention that the water wall was due to the strong wind. The testimony, taken as a whole, does not, in our opinion, sustain the view that the logs in the Bayou Sale basin, placed there by defendant, caused the submerge of the plaintiffs’ plantation. It had rained in torrents; the whole section of *67 the country was under water. Testimony for plaintiffs shows that in heavy rains the carrying capacity of the canal was not sufficient. The result was that the water came down too fast and overflowed its banks and adjacent lands, and all this without reference to whether there were logs or not in the bayou.
A stream should not be heard to charge all its sluggishness and incapacity to logs.
True, there were logs, some sunken, some floating, and others loose, and some were lying across the stream; and yet we have not found that they were an absolute obstruction to drainage to the extent claimed by plaintiffs. It is difficult to determine from the evidence how great an obstruction the logs were, and how much water ,they held back. It is equally as difficult to And that the temporary stagnation of water on plaintiffs’ place was due to those logs. There was a fall of about seven feet from plaintiffs’ place to the adjacent lands, where the logs were in the canal. It is not shown that the water was checked up to that height.
We do not think, with the evidence before us, we should hold that the logs caused the damage.
One of the plaintiffs’ witnesses informs us that after the logs had been removed the water did not immediately run off from plaintiffs’ plantation. It remained at a standstill for 24 hours, and did not immediately run off after the logs had been removed, as it would have done had the logs been the whole cause of the overflow. It is not satisfactorily shown how'it was possible for the impediments in the canal to cause the water to back up to plaintiffs’ plantation, a number of miles above, and hold it up there for a number of days. Logs floating in a bayou rise and fall with the water, and do not obstruct the flow save to the extent they displace the water. If the stream has any current, it will not be entirely checked by floating logs. There were three possible causes: The precipitation itself, the southeast wind, and the logs. If the logs were remotely the cause, plaintiff would still be left without a cause of action. The evidence before us creates a very serious doubt whether they are the cause.
We have already noted that the water drained through Bayou Sale, through a canal to Bayou Chauvin, and through Bayou Chauvin into Lake Quitman, from Lake Quitman into Bayou Dulac, and from Dulac into Bayou Oaillou into the Gulf. There is also an outlet from Lake Quitman by Robinson Canal and the Boudreaux Canal.
The sheet of water in this country and the tide water were held back by the wind as shown by the weight of the testimony. Having arrived at this conclusion regarding the cause of the submergence of plaintiffs’ place, the status of the drain—one of the questions at issue—presents questions upon which we will dwell for an instant.
The drain is unquestionably public. It was opened with the sanction of the parish, and with the aid of some private subscription. There is a statute authorizing such enterprises.
It follows that drains are not to be closed or impeded. They are to have free scope to the sea. But timbermen are also entitled to a right of way, but one (the timberman) is 'not to interfere with the other (the drain).
It is true, incumbrances, such as those found in the drain in question, are not adjuncts to drains nor to a free stream.
Defendants urge that plaintiffs’ suit is for damages, and that the injunction is a mere incident of the principal demand for damages; and defendants further urge that, the moment no damage is found to be due, the injunction must fall and be dissolved.
We, after having considered the subject, have arrived at the conclusion that both demands, one for damages, and the other for the protection of the drain, and the injunction, are intimately connected. They form one consideration upon which the suit is based, and, as relates to jurisdiction, the value of one of the items going to form the whole consideration may well be considered in passing upon the whole demand.
But we do not think that on the merits plaintiffs are entitled to an injunction.
Although this court has jurisdiction to hear and decide the issues on the merits, we have not arrived, on the merits, at the conclusion that plaintiffs are entitled to judgment for costs, for that would be the only effect of the judgment, in view of the fact that they have not succeeded in proving that defendants’ act in placing the logs in the bayou is the cause of the damages they have suffered.
*69 In the case cited hy defendants with great confidence, the court- held that plaintiffs in injunction were entitled to the injunction prayed for hy them, although they had not shown damages growing out of the act complained of. Dudley v. Tilton, 14 La. Ann. 283.
The facts of the pending case are not very similar to those of the cited case.
In the latter, the defendants were charged with trespass, and trespass was shown. Plaintiff asked that defendants be stopped from continuing with the work which they were then performing. His prayer was granted.
In the pending suit the right to the use of the stream was admitted, and plaintiffs sought to regulate this use upon the ground that it has caused them damages for an amount which they failed to prove had been suffered. An action to regulate the use may be governed by a different rule than one to prevent entirely the use.
Here it was not shown that there was a violation of plaintiff’s right of drainage.
The act complained of was not a continuing act, as in the case cited.
From the fact that defendants had placed logs in the bayou, it does not follow that they would place others; and it is not to be inferred, without special allegation, that such was their intention.
The petition does not set forth that plaintiffs apprehended, or had the least cause to apprehend, that defendants would continue to place their logs in the bayou, and continue to be negligent in regard to their location in the bayou.
As we read the petition on account of defendants’ acts already done, plaintiffs asked that they be enjoined—to quote from the petition—“from obstructing said Bayou Sale” and other streams, into which its waters flow, and from interfering with the drain, an allegation, we infer, which had reference to the obstruction in the bayou at the time. The future action of' the parties defendant could not be used as a ground for an injunction, without special allegation setting forth the facts regarding illegal use in the future.
The issue tendered was damage for existing violation of a right, and not for judgment to prevent future action of the parties, against which plaintiffs do not aver that they felt the least concern.
The subject of navigation or freedom of the stream is not an issue. Defendants could have continued to have pulled logs, and put them near the banks, and pull them away, without giving ground for objection.
If careful in the use of this right, it did not give ground for injunction.
We do not think we should make an injunction peremptory, preventing them from using the stream at all under any circumstances. This would be the grasp o‘f the judgment, if granted. This we must decline to do.
Two of the defendants, Charles and Alfred Daspit, it seems, were inadvisedly made parties defendant. They had naught to do with obstructing the drain, and are in no way to be enjoined for obstructing or threatening to obstruct it.
The injunction as to these defendants must be dissolved.
They claim of the defendants attorney’s fee for dissolving the writ.
The case, as it comes up, does not show that there was a trial on motion to dissolve. The motion to dissolve the injunction was referred to the merits, we have already stated.
The weight of the decision is against the demand for damages, which, under the rules of practice, are to be allowed for services rendered in dissolving the injunction or other conservatory writ—not for services rendered on the merits, as in this case.
The defense was exclusively on the merits. It was only on the merits made to appear that these defendants were made parties in error, under circumstances which do not give rise to the idea that plaintiff, as to these defendants, was actuated by malice.
Under the circumstances of this case, we cannot include counsel’s fee as due to these defendants.
Defendants have also asked for damages in reconvention, on the ground that plaintiffs, in suing out a writ of injunction, had damaged them in different ways. They sought to prove this demand in the lower court. Plaintiff objected, on the ground “that the injunction did not prevent the parties from getting out the timber, from putting the logs *71 and timber into the canal and bayon, and preventing drain.”
This was the purpose, as shown by plaintiffs’ petition, as we take it, and as admitted by plaintiffs. Upon this they obtained a favorable ruling on one of the issues which came up during the trial. Defendants, not having been as much enjoined as they imagined, are not entitled to damages.
For reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, affirmed, at plaintiffs’ costs.